UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk, Virginia



RITA CHECHE

    Plaintiff,

v.                                        Civil Action No. 2:09cv577

WITTSTAT TITLE & ESCROW COMPANY, LLC

and

WACHOVIA BANK NATIONAL ASSOCIATION,

    Defendants.

## MEMORANDUM OF DECISION

This matter is before the Court following a two-day bench trial. Plaintiff, Rita Cheche ("Plaintiff"), seeks rescission and statutory and enhanced damages under the Truth In Lending Act, 15 U.S.C. § 1601 et seq. ("TILA"), arising out of a mortgage loan transaction between Plaintiff and a predecessor company to defendant Wachovia Bank National Association ("Wachovia"). After reviewing the exhibits, carefully considering the trial testimony, weighing the credibility of the witnesses, and analyzing the applicable law, the Court now makes its Findings of Fact and Conclusions of Law. Fed. R. Civ. P. 52. As set forth below, the Court finds that Plaintiff fails to establish a TILA violation and fails to establish that she

provided timely notice of cancellation of the mortgage loan at issue in this case. Judgment is therefore entered in favor of Defendants.[1]

## I. FINDINGS OF FACT

### A. Plaintiff entered into a credit transaction

Plaintiff's amended complaint alleges that on November 21, 2006, she "entered into a credit transaction within the meaning of TILA" by obtaining a home mortgage through People's Choice Home Loans, Inc. ("People's Choice"). (Am. Compl. ¶ 8). The amended complaint further states that the credit transaction was "evidenced by a note signed by the plaintiff" on November 21, 2006, and that such note was "secured by a deed of trust signed by the plaintiff" on the same date. (Id.) It is undisputed that Wachovia later became an assignee and owner of the note referenced in the amended complaint. Furthermore, it is undisputed that at the time of the "credit transaction" Plaintiff had some background in real estate, had purchased several investment properties, owned and operated a floor contracting company, and had refinanced her home on multiple occasions within the three year period she owned the property.

---

[1] The parties previously entered into a written stipulation providing that defendant Wittstat Title & Escrow Company, LLC ("Wittstat") is only a nominal party and that Wittstat need not participate in any pre-trial matters. (Dkt. No. 31). On the first day of trial, the parties further stipulated that Wittstat need not be present for trial, and Wittstat's counsel was excused by the Court. The Court's judgment herein is entered in favor of both Wachovia and Wittstat.

2

At trial, Plaintiff testified at length regarding the November 21, 2006, late-night loan closing. As described below, Plaintiff's testimony was not only inconsistent with other trial evidence, but reflects Plaintiff's extreme clarity and incredible detail regarding certain alleged events, yet a virtual void of any memory regarding other very significant events. Such stark and unexplained contrast greatly impacts the weight afforded Plaintiff's testimony.

On November 21, 2006, People's Choice, operating out of California, sent a loan package to a Virginia notary who then met with Plaintiff at a McDonalds restaurant near Plaintiff's home to conduct the loan closing. Plaintiff claims that she did not intend to go through with the closing on that night because she questioned the accuracy of the loan paperwork. Thus, Plaintiff came up with a plan to leave her driver's license at home, roust her young son from bed sometime around 10 p.m., and have her boyfriend drive her, and her son, to the McDonalds.

Plaintiff testified that she met the notary at McDonalds sometime around 10 or 11 p.m., purportedly without her driver's license and with the intent to merely pick up the loan documents, but she could not recall whether or not she began signing loan documents. Plaintiff confirmed under oath that what appears to be her signature is reflected on numerous loan documents, all dated November 21, 2006. Many of these documents

3

also bear the notary's stamp and signature. Plaintiff did not deny signing many of these documents, but instead claimed a total lack of recollection regarding whether she signed them. In contrast, Plaintiff firmly and repeatedly stated that she did <u>not</u> sign the mortgage note and did not sign several other documents that reflect what she refers to as incorrect loan terms. Notably, all such documents appear to bear Plaintiff's signature and are dated November 21, 2006, and the note further includes the notary's stamp. When pressed for an explanation regarding how her signature appears on documents she denies signing, Plaintiff indicated that she believes her signature must have been "robo-signed" or "photo-shopped" onto such forms. Such forgery claim was not previously asserted in Plaintiff's complaint, amended complaint, or apparently even in her deposition. To the contrary, as indicated above, Plaintiff's amended complaint clearly states that on November 21, 2006, Plaintiff entered into a TILA credit transaction and signed the mortgage note.

Plaintiff's near complete memory lapse regarding events occurring at McDonalds appears to have ended when she returned home, as she purports to have a very clear recollection of returning home, reviewing the loan documents, and making the decision to submit a three-day cancellation notice to People's Choice. Curiously, Plaintiff asserts that she decided to submit

such cancellation notice even though she claims to have never completed the loan closing.[2] Plaintiff testified that the loan documents provided by People's Choice and presented to Plaintiff by the notary did not have _any_ copies of the three-day right to cancel notice, so Plaintiff created her own notice from documents associated with her prior mortgage refinance transactions. Plaintiff claims that she both faxed and mailed a completed right to cancel form to People's Choice on November 22, 2006. Although Plaintiff asserts that she verbally confirmed that People's Choice received such cancellation notice, she offers no independent evidence of sending the notice or confirming its receipt.

After considering all of the testimony and exhibits, the Court concludes that Plaintiff signed all of the loan documents at issue and entered into a TILA credit transaction. In addition to the apparent conflicts between Plaintiff's testimony and other evidence,[3] the Court's decision is influenced heavily

---

[2] The Court likewise finds it curious that Plaintiff would subsequently make somewhere between 20 and 30 payments on a loan that she claims: (1) she never entered into; and (2) she timely canceled.

[3] For example, the notary testified that the very first step he _must_ perform at any closing is to confirm the borrower's identity by examining an original driver's license. Here, the notary not only conducted such step but completed a "Customer Identification Verification" form. (Def's Ex. 59). Such document includes the notary's stamp and signature, is dated November 21, 2006, and includes handwritten information _taken from Plaintiff's driver's license,_ including the I.D. number and expiration date. Plaintiff's assertion that she went out of her way to leave her driver's license home is therefore in direct conflict with other credible evidence.

5

by the contrast between Plaintiff's incredible precision regarding certain events surrounding the closing, but virtual memory void regarding whether she signed numerous documents associated with a loan of more than $650,000 on her primary residence—matters that surely should have stuck in her memory. Furthermore, although the instant case has been pending for more than two years, it was not until <u>the day of trial</u> that Plaintiff first claimed that her name was forged and that she had not completed the closing, testimony that appeared to surprise counsel for both parties. Such newly advanced facts not only conflict with Plaintiff's own amended complaint, but conflict with the testimony of the notary and exhibits before the Court.

### B. Plaintiff fails to demonstrate that she did not receive two copies of the notice of right to cancel

Plaintiff testified that she did not receive <u>any</u> copies of the notice of right to cancel form on November 21, 2006. Such testimony is received in light of Plaintiff's inability to remember whether or not she signed numerous loan documents on that same night, and her surprise assertion that the mortgage note was forged.

In contrast to Plaintiff's testimony, the notary stated that he provided Plaintiff with two copies of the three-day notice of right to cancel form. Although, at times, the notary equivocated about how certain he was about the disputed events

6

because they occurred more than five years ago, on balance, his testimony, as supplemented by several written exhibits, convinces the Court that Plaintiff received the two required copies. First, Plaintiff stated that she had to create her own right to cancel form because she never received one, yet Wachovia introduced a copy of a notice of right to cancel form that bears Plaintiff's signature and the notary testified that Plaintiff received an unsigned copy of all forms that she signed during the closing.[4] (Def's Ex. 33). Furthermore, the notice of right to cancel signed by Plaintiff and dated November 21, 2006, states as follows: "The undersigned . . . acknowledge[s] receipt of two copies of <u>NOTICE of RIGHT TO CANCEL</u> . . . ."[5] (<u>Id.</u>) Second, Wachovia introduced a document providing instructions to the notary for Plaintiff's closing, which states in all caps: "<u>ATTENTION NOTARY PUBLIC, THE FOLLOWING SIGNOFF PROCEDURE MUST BE FOLLOWED.</u>" (Def's Ex. 60). Such document only provides two instructions to the notary, that the borrower receive "TWO (2)" copies of the notice of right to cancel and that the borrower receive a copy of all other loan documents. (<u>Id.</u>) Such form

---

[4] The notary explained his closing procedure as follows: he receives the loan package via email, prints two complete copies and confirms the contents, the borrower executes one copy in his presence, and the other copy remains in the notary's satchel until the conclusion of the closing at which time he provides such unsigned complete copy to the borrower.

[5] As discussed below in Part II, Plaintiff's written acknowledgement of receipt of two copies of the notice of right to cancel creates a rebuttable presumption that two copies were in fact received.

was signed and stamped by the notary and is dated November 21, 2006. The document further states on its face that, by signing such document, the notary "acknowledges compliance" with such requirements. (Id.) Accordingly, after considering all the evidence, including both Plaintiff's and the notary's contemporaneous written confirmations indicating that Plaintiff received two copies of the notice of right to cancel form, as well as the law discussed below, the Court finds that Plaintiff has failed to demonstrate a TILA violation based on the lender's alleged failure to provide two copies of the notice of right to cancel.

### C. Plaintiff fails to demonstrate that she cancelled the People's Choice loan within three (3) days

Plaintiff testified that after she returned home from McDonalds having not signed all of the necessary loan documents, and having no real recollection of many documents that she "may" have signed, Plaintiff decided to cancel the loan transaction that was never completed. Plaintiff states that she both faxed and mailed her homemade three-day cancellation notice, and that she confirmed receipt with People's Choice.

Considering all of the evidence before the Court, and affording such evidence the appropriate weight, the Court finds that Plaintiff fails to establish that she faxed or mailed the three-day cancellation notice. First, as with the Court's prior

findings, Plaintiff's testimony is considered in light of her patchy recollection of the events surrounding her closing—some events are recalled in vivid detail, whereas other key events are not recalled at all. Furthermore, Plaintiff waited until she took the stand on the day of trial to first assert that an unnamed individual forged her signature on the note, an eleventh-hour change in position that conflicts not only with Plaintiff's own previous claims, but with the other evidence in this case.

Second, Plaintiff offers no independent evidence of sending the notice of right to cancel or confirming its receipt with People's Choice. Plaintiff does present a copy of the homemade right to cancel and it includes on its face a hand-stamp that reads "Faxed" and the handwritten date of "11-22-06."[6] However, although Plaintiff seeks to demonstrate that five years ago she had the foresight to affix a hand-stamp on such document, she apparently lacked the foresight to obtain and retain a fax confirmation statement or any evidence of mailing (such as a registered mail receipt) as such documents were not presented to the Court and no explanation for their absence was offered. Similarly, Plaintiff did not present any other documents or call

---

[6] Although Plaintiff testified that she created and signed two originals of this document, one of which she purportedly mailed to People's Choice, Plaintiff did not introduce her retained signed original as an exhibit, nor did she even bring it with her to trial—despite having brought a box of other documents.

9

a single witness to attempt to corroborate her claim that the notice was sent, received, or confirmed received by People's Choice.

Third, with both this and the findings set forth above, the Court considers as context Plaintiff's cycle of repeatedly refinancing her home during a very short period of time. In fact, Plaintiff asserts that this was the second time that she decided not to complete a loan closing, but that two different loan companies committed fraud and funded the incomplete loans anyway. Additionally, Plaintiff asserted at one point during trial that she was earning between $20,000 and $60,000 per month, yet it appears that she hasn't filed income tax returns in many years. Plaintiff also had a tax lien on her home of nearly $100,000.

For all the reasons discussed above, the Court finds that Plaintiff failed to demonstrate that she cancelled her People's Choice loan within three days.

## II. CONCLUSIONS OF LAW

Based on the factual findings above, there are minimal, if any, disputes as to the applicable law that must be resolved by the Court. Relevant to Part I.A above, as noted by the Court on the record, <u>it appears</u> that unless Plaintiff actually entered into a credit transaction governed by TILA, Wachovia's predecessor was not required to provide any TILA disclosures and

a TILA cause of action simply would not exist. Cf. Jensen v. Ray Kim Ford, Inc., 920 F.2d 3, 4 (7th Cir. 1990) (indicating that because the forged contract was a nullity under common law and created no obligation on the part of the borrowers, it did not trigger the lender's obligations under TILA); Anthony v. Anthony, 642 F. Supp. 2d 1366, 1373 (S.D. Fla. 2009) (indicating that TILA disclosures were not required because the plaintiff was never "contractually obligated under the forged mortgages at issue," and although the plaintiff "should have a remedy for the forgery . . . [such] remedy . . . is not provided in TILA"). However, because the Court finds that Plaintiff did in fact enter into a TILA credit transaction on November 21, 2006, the Court need not reach the above referenced question of law.

Turning to the second issue as framed by the parties, it likewise appears that the Court need not resolve any legal dispute regarding Plaintiff's receipt of the notice of right to cancel. It is undisputed that TILA provides that "[t]he creditor shall clearly and conspicuously disclose, in accordance with regulations of the Board, . . . the rights of the obligor under this section," which include the right to cancel. 15 U.S.C. § 1635(a). The applicable regulation states that "a creditor shall deliver two copies[7] of the notice of the right to

---

[7] Although, at trial, Wachovia's counsel suggested that providing one copy of a notice of right to cancel constitutes substantial compliance

rescind" to the borrower. 12 C.F.R. § 226.15 (emphasis added). TILA further provides that "written acknowledgment of receipt of any disclosures required under this subchapter . . . does no more than create a rebuttable presumption of delivery thereof." 15 U.S.C.A. § 1635(c). As discussed above, here, both Plaintiff and the notary signed written acknowledgements indicating that Plaintiff received two copies of the notice of right to cancel. Plaintiff's contrary evidence, given the weight deemed appropriate by the Court, fails to rebut such contemporaneous evidence and fails to overcome the legal presumption set forth in § 1635(c).

The final issue,[8] whether Plaintiff faxed or mailed the homemade right to cancel letter within three days, is likewise

---

with TILA, the Court need not address such assertion as the Court concludes that two copies were in fact provided to Plaintiff.

[8] Two additional disputes arose at trial that need not be resolved:
   First, there was a factual and legal dispute regarding Plaintiff's ability to "tender" if Plaintiff otherwise established a right to rescission. See American Mortg. Network, Inc. v. Shelton, 486 F.3d 815, 821 (4th Cir. 2007) ("Once the trial judge . . . determined that the [borrowers] were unable to tender the loan proceeds, the remedy of unconditional rescission was inappropriate."). Although the Court has substantial doubt as to whether Plaintiff presented sufficient evidence of her ability to tender, particularly in light of the notice provided by the Court's Opinion and Order issued almost a year before trial (Dkt. No. 30), the Court need not reach such question as Plaintiff failed to establish that she is otherwise entitled to rescission.
   Second, a legal dispute arose at trial regarding whether the Federal Rules of Evidence permitted Plaintiff to testify that she confirmed receipt of the right to cancel with People's Choice. Wachovia objected to the admission of such evidence as hearsay, whereas Plaintiff argued that statements made by People's Choice were admissible as statements by a party-opponent because Wachovia stood in

12

resolved on the facts. Although it is undisputed that TILA provides that borrowers "shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction," 15 U.S.C. § 1635(a), here, Plaintiff failed to establish that she rescinded the contract within such period. Accordingly, there is no legal dispute for the Court to resolve.

### III. CONCLUSION

For the reasons set forth above, the Court finds that Plaintiff failed to establish a TILA violation or that she timely advanced a claim seeking rescission. It is therefore **ORDERED** that judgment be entered in favor of Defendants.

The Clerk is **DIRECTED** to send a copy of this Memorandum of Decision to all counsel of record.

**IT IS SO ORDERED.**

/s/ [signature]
Mark S. Davis
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
February  7 , 2012

---

the shoes of People's Choice. The Court need not resolve such evidentiary dispute because even if <u>admissible</u>, when given the appropriate weight by the Court, such assertions fail to demonstrate that Plaintiff sent a cancellation notice to People's Choice within three business days of the loan closing.

13